## SUPREME COURT.

### Wm. P. Furniss agt. Wm. H. Brown's administratrix.

An agreement to "fit up a steamboat (then fitted and furnished for the trans-
portation of passengers on the Sound) in a suitable manner for her to proceed
from New-York to the Pacific, *via* the Straits of Magellan, and to trade along
the west *coast* of America, or in the *rivers* of the same"—*held*, when thus fitted,
not a guarantee of the capacity of the steamboat for *ocean service*, or to en-
counter storms at sea at a great distance from land.

*New - York General Term, October*, 1859.
Motion by defendant for a new trial.

Charles O'Conor *and* Chas. A. Peabody, *for defendant*.
Sandford & Striker *and* W. C. Noyes, *for plaintiff*.

By the court—Roosevelt, Justice. The only part of this
controversy which it is now necessary to consider, is that
which relates to the loss of the steamer Rhode-Island, wrecked'
a few days out, on her voyage from New-York to California,
in the winter of 1850.

At the trial, which took place before the late Mr. Justice
Morris, a verdict was found against the defendant, as the ad-
ministratrix of her deceased husband, Wm. H. Brown, for
$39,894.50, for his default in properly fitting up the vessel.
This verdict is now sought to be set aside on various grounds,
and among them the alleged insufficiency of the evidence to
sustain either that or any other verdict against defendant.

Brown, a distinguished ship-builder, was the owner, it ap-
pears, of the vessel in question. On the 1st of November,
1849, he sold to Furniss, the plaintiff, an undivided half
interest in her. By the terms of the contract (in writing), the
price was to be "at the rate of $50,000 for the whole boat,"
payable in the notes of the purchaser at fifteen months. The
subject of the contract was described as on "the steam*boat*
Rhode-Island, burden 1,000 tons, or thereabouts, with all her

tackle, appurtenances, boats, and furniture, as she is now completely fitted and furnished for the transportation of passengers on the Sound." Brown, however, was "to proceed and fit up said steamboat Rhode-Island in a suitable manner, for her to proceed from New-York to the Pacific, via the Straits of Magellan, and to trade along the west coast of America, or in the rivers of the same, as may be thought most advantageous by said William P. Furniss after her arrival there."

Brown, it will be seen, sold the half of the vessel, not as an ocean steamer, but as a river and coastwise steamboat. And, although he stipulated "to fit her up in a suitable manner," he did not stipulate to rebuild her. He was to make her "fit for sea;" but we do not understand, by the use of those terms, that the parties contemplated that a river "steamboat," built for river navigation, was to be changed into a sea steamer. She was to be "fitted," as far as such a steamboat could be fitted, for a single sea voyage. And this interpretation of the contract is confirmed by the amount to be laid out, which was "not to exceed $10,000, and as much less as possible"—Furniss paying one half—a sum obviously insufficient to convert an ordinary steamboat into an ocean steamship. Brown, in point of fact, at his own cost, laid out nearly double the stipulated sum. And Furniss, before giving his notes, saw the vessel as she was fitted up for the voyage, and, without complaint, took possession of her. He was a merchant, engaged in the shipping business, and as competent, probably, to judge of the prudence of sending such a vessel on such a voyage as Brown. They both took the risk; and we think the evidence given on the trial was wholly inadequate to show that she was lost from any omission on the part of Brown, or from any other cause than the inherent insufficiency of any mere "steamboat," however "fitted up," to encounter storms at sea at a great distance from land.

The jury, in weighing the evidence, would seem to have acted upon the idea that Brown had guaranteed the capacity of the steamboat for ocean service. In this we think they erred.

A new trial must be granted—costs to abide the event.